UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LAURA SUMNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:22-cv-00331-AGF |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM AND ORDER

This action is before the Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Laura Sumner was not disabled, and thus not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 or supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f.  For the reasons stated below, the decision will be affirmed in part and reversed and remanded in part.

## BACKGROUND

The Court adopts the statement of facts set forth in Plaintiff's Statement of Uncontroverted Material Facts (Doc. No. 11-1) and Additional Facts (Doc. No. 13-1), as supplemented by Defendant (Doc. No. 12-1).  Together, these statements provide a fair description of the record before the Court.  Specific facts will be discussed as needed to address the parties' arguments.

Plaintiff, who was born on December 9, 1960, protectively filed an application for

1

supplemental security income on March 31, 2020, alleging a disability beginning on October 1, 2019. (Tr. 10). She also filed a Title II application for disability insurance benefits on February 3, 2020. *Id.* In both applications, Plaintiff stated that a left foot injury, left middle finger injury, and right knee injury rendered her disabled and unable to work. (Tr. 275). On appeal, Plaintiff also claimed that Post-Traumatic Stress Disorder ("PTSD"), Bi-Polar Disorder, Generalized Anxiety Disorder, and panic attacks constituted a severe mental impairment rendering her disabled. *See* (Tr. 34).

The Administrative Law Judge ("ALJ") held a hearing on October 28, 2021. Plaintiff was represented by counsel, and both Plaintiff and a Vocational Expert ("VE") testified during the hearing. (Tr. 29). By a decision dated November 16, 2021, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease, degenerative joint disease of the right knee, and a fractured left fifth toe. (Tr. 12). He also found that Plaintiff had non-severe medical conditions, including a right elbow impairment, left middle finger impairments, mild obesity, and depressive disorder. (Tr. 13). The ALJ found that none of Plaintiff's impairments or combination of impairments met or medically equaled one of the deemed-disabling impairments listed in the Commissioner's regulations.

Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium work, as defined by the Commissioner's regulations, "except she is limited to frequent kneeling and frequent climbing of ladders, ropes, and scaffolds." (Tr. 15). The ALJ found that Plaintiff is capable of performing her past relevant work as a secret shopper, which required medium exertion and semi-skilled labor. (Tr. 20). During

2

Plaintiff's disability hearing, the VE also testified that a claimant with Plaintiff's age, education, work experience, and residual functional capacity could also perform the requirements of medium exertion and unskilled labor, such as laundry worker, binding printer, or tumbler operator.  *Id.*  Accordingly, the ALJ found that Plaintiff was not disabled under the Social Security Act.

Plaintiff filed a timely request for review by the Appeals Council, which the Council denied on February 4, 2022.  (Tr. 1).  Plaintiff has thus exhausted all administrative remedies, and the ALJ's decision stands as the final agency action now under review.  In her brief before this Court, Plaintiff argues that: (1) the ALJ failed to properly evaluate the medical opinion evidence for Plaintiff's physical ailments, and (ii) the ALJ improperly found Plaintiff's mental impairments non-severe because he failed to properly evaluate the medical opinion evidence for Plaintiff's mental ailments.  Plaintiff asks that the ALJ's decision be reversed and that the case be remanded for an award of benefits or, alternatively, further evaluation.

### DISCUSSION

**Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole.  *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011).  The court "may not reverse merely because substantial evidence would support a contrary outcome.  Substantial evidence is that which a reasonable mind might

3

accept as adequate to support a conclusion." *Id*. (citations omitted).  A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision.  If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted).  Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).  A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance.  *Id.*

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability.  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments.  A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c).

A special technique is used to determine the severity of mental disorders.  This technique calls for rating the claimant's degree of limitations in four areas of functioning,

4

also known as the "paragraph B" criteria: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  20 C.F.R. § 404.1520a(c)(3).  To satisfy the "paragraph B" criteria, the claimant's mental impairments must result in one "extreme" or two "marked" limitations in functioning.  An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis.  A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.  20 C.F.R. § 404, Subpt. P, App. 1, 12.00(F)(2).

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations.  If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work.  If the claimant cannot perform his or her past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience.  *See, e.g.*, *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).  But even though the burden of production shifts to the Commissioner at step five, the burden of persuasion to prove disability remains on the claimant.  *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

**(1) Physical Medical Opinion Evidence**

Plaintiff contends that the ALJ failed to properly evaluate the medical opinions of non-treating and non-examining physicians who lacked access to vital later medical evidence. (Doc. No. 11 at 3). Specifically, Plaintiff claims that the ALJ relied "almost exclusively" on the opinions of state-agency, non-examining physicians in determining claimant's limitations. *Id*. However, the opinions from these physicians were more than one year old at the time of the AJL's decision and predicated on evidence dating from October 2019 through July 2020. *Id*; *see also* (Tr. 119-132). Plaintiff contends that the AJL failed to explain how the state-agency physicians' opinions were consistent with the remainder of the record. *Id*. at 4.

Claims filed after March 27, 2017, like Plaintiff's, require the ALJ to evaluate medical opinions pursuant to 20 C.F.R. § 404.1520c. This provision states that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, an ALJ is to evaluate the persuasiveness of any opinion or prior administrative finding by considering the: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors. 20 C.F.R. § 404.1520c(c).

6

The rules make clear that supportability and consistency are the "most important factors"; therefore, an ALJ must explain how she considered these factors in the decision.  20 C.F.R. § 404.1520c(b)(2).  An ALJ may, but is not required to, explain how she considered the remaining factors.  *Id.  See also, Brian O v. Comm'r of Soc. Sec.*, 2020 WL 3077009, at *4 (N.D.N.Y. June 10, 2020) (quoting 20 C.F.R. § 404.1520c(a), (b), which states that, though the new regulations do not assign weight to a medical opinion, the ALJ must still explain how he considered the opinions and how persuasive he found those opinions). Though these rules require the ALJ to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted.  *Wildman v. Astrue*, 956 F.3d 959, 966 (8th Cir. 2010) (citing *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998).  The failure to cite specific evidence does not indicate that the ALJ failed to consider such evidence, particularly when the ALJ mentions the overall findings throughout her opinion.  *Id*.

The ALJ found the prior administrative medical findings of the state-agency physicians persuasive but did not assign them any specific evidentiary weight.  (Tr. 19). He specifically noted that these physicians reviewed the record in June and July of 2020. *Id*.  However, he also noted that the opinions were consistent with later evidence from August 2020, in which Plaintiff rated her degree of pain as only a two on a ten-point scale, and in which it was noted that she had a "limited but acceptable" toe range of motion by that time, with only a "mild" swelling in her toe as of December 2020.  (Tr. 18-19).  This evidence rendered the opinion supportable with later objective medical evidence. (Tr. 19).

As to consistency, the ALJ explained that Plaintiff's May 2021 electrodiagnostic testing revealed normal results, with only minimal slowing. (Tr. 18). The ALJ did note that physical examinations in January and July 2021 indicated some extension in the toe while standing, but that her musculoskeletal and neurological findings were otherwise normal. *Id*. This evidence was consistent with the evidence the state-agency physicians considered and the opinions they rendered: that Plaintiff's conditions "significantly improved" within twelve months of her injuries. (Tr. 19). On this record, the Court finds the ALJ adequately explained both the supportability and consistency of the medical opinions on which he relied, and the Court will affirm the judgment with respect to the ALJ's opinion regarding Plaintiff's physical limitations.

**(2) Psychiatric Medical Opinion Evidence**

Plaintiff alleges that the ALJ improperly found that her mental impairments were not severe at step two of the sequential evaluation process because he relied heavily on the dated opinions of non-examining, state-agency psychologists. (Doc. No. 11 at 6). Plaintiff testified that she suffered from mental health conditions, including depression, anxiety, PTSD, and panic attacks. She explained that the source of her PTSD related to a time when she was working as a secret shopper, visiting 7-11 stores. During one of her visits, she walked in on a robbery, and was prevented from leaving the store. She says she began experiencing symptoms before the start of her treatment, which began as early as January 2021. (Doc. No. 11 at 6; Tr. 445). Plaintiff testified, in part, that she remained fearful entering into any type of convenience store, and that she continued to experience panic attacks. (Tr. 34-35).

8

An impairment is "severe" under the Act if it significantly limits an individual's ability to perform basic work activities. *See* 20 C.F.R. § 416.922. However, an impairment is non-severe if it has no more than a minimal impact on an individual's ability to do basic work activities. *Id.* The claimant bears the burden of proving severity. *See Kirby v. Astrue*, 500 F.3d 705, 707–08 (8th Cir. 2007). While "[s]everity is not an onerous requirement for the claimant to meet, . . . it is also not a toothless standard, and [courts] have upheld on numerous occasions [an ALJ's] finding that a claimant failed to make this showing." *Id.* at 709 (internal citation omitted). Mere diagnosis of a mental impairment, and even the prescription of medications for such impairments, do not necessarily render the impairment severe. *Johnston v. Apfel*, 210 F.3d 870, 874-875 (8th Cir. 2000).

When evaluating the severity of a claimant's mental impairments, an ALJ must use the "special technique" outlined in 20 C.F.R. § 404.1520a. *See Cuthrell v. Astrue*, 702 F.3d 1114, 1117 (8th Cir. 2013). The ALJ first "evaluate[s] [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable mental impairment." 20 C.F.R. § 404.1520a(b)(1). The ALJ "then rate[s] the degree of functional limitation resulting from the impairment(s)" in four broad functional areas known as the "Paragraph B" criteria. *See* § 404.1520a(b)(2); *see, e.g.*, *Roades v. Astrue*, 861 F. Supp. 2d 983, 992 (E.D. Mo. 2012). As noted above, the criteria are as follows: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3). The ALJ rates the criteria using a five-point scale of none,

9

mild, moderate, marked, and extreme. *See* § 404.1520(c)(4).

If the ALJ rates the claimant's mental impairments as "none" or "mild," then the ALJ will generally conclude that the mental impairments are non-severe, unless the evidence indicates there is more than a minimal limitation in the claimant's ability to perform basic work activities. § 404.1520a(d)(1).  That said, to be "considered a severe impairment at step two, a mental impairment need not cause marked restrictions." *Vicky R. v. Saul*, No. 19-cv-2530 (ADM/ECW), 2021 WL 536297, at *1 (D. Minn. Jan. 28, 2020), *report and recommendation adopted by* No. 19-cv-2530 ADM/ECW, 2021 WL 533685 (D. Minn. Feb. 12, 2021) (quoting *Timi W. v. Berryhill*, No. 1:17-cv-01366-SLD-EIL, 2019 WL 1227840, at *2 (C.D. Ill. Mar. 15, 2019)). "[C]ourts have concluded that a 'moderate' limitation is sufficient to support a finding of 'severity' at [Step Two]." *Vicky R.*, 2021 WL 536397, at *9; *see, e.g.*, *Schadenfroh v. Colvin*, No. 1:13-cv-00223-SEB-DKL, 2014 WL 1260123, at *4 (S.D. Ind. Mar. 27, 2014) (finding a mental impairment severe where there is a "moderate" or "extreme" rating in one of the first three areas, or a rating of more than "none" in the fourth area) (citing 20 C.F.R. § 404.1520a(d)(1))); *Stewart v. Astrue*, No. 09-cv-2062, 2012 WL 2994080, at *5 n.3 (N.D. Ill. July 19, 2012) (observing that "20 C.F.R. § 404.2520a(d)(1) implies that moderate impairment may qualify as a severe impairment where the evidence shows that it is 'more than minimal'").  Furthermore, a step two determination of "non-severe" is not necessarily the end of the ALJ's inquiry.  Instead, when crafting the RFC, the ALJ must also consider the combined effect of all of the claimant's impairments, without regard to whether any one impairment would be

10

sufficiently severe to be disabling if considered separately. *Presson v. Saul*, Case No. 4:20 CV 516 SRW, 2021 WL 2554215, at *4 (E.D. Mo. Jun. 22, 2021) (internal citations omitted).

Though an ALJ is not required to discuss each specific piece of evidence in the record when making his disability determination, he must still provide a "logical bridge" between the RFC and the evidence. *Holdeman v. Kijakazi*, Case No. 20-cv-729-NKL, 2021 WL 6062368, at *4 (W.D. Mo. Dec. 22, 2021) (citing *Black*, 143 F.3d at 386; Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7). The construction of a logical bridge requires narrative discussion of how the evidence supports each conclusion and how the ALJ resolved material ambiguities and inconsistencies in the record. *Id*. The explanation must be sufficiently detailed so that the Court is not required to speculate as to the reasons behind the ALJ's persuasiveness finding, or lack thereof. *Bruton v. Kijakazi*, Case No. 3:20-cv-232, 2022 WL 1749828, at *6 (D. North Dakota, Feb. 8, 2022) (internal quotation and marks omitted).

When considering the Paragraph B criteria, the ALJ cited both to the state-agency psychologists' findings, and noted Plaintiff's later mental health records from January, February, April, June, and July 2021, in which Plaintiff's mental status examinations were largely normal, except for a tearful affect in February 2021. (Tr. 14-15). The ALJ found the opinions of the consulting psychologists, that Plaintiff had no "medically determinable impairments," were not fully consistent with the remainder of the record as a whole. *Id*. Nonetheless, the ALJ found that Plaintiff experienced no limitation for any period of twelve consecutive months or longer, based on the status examinations. (Tr.

11

13).  However, the ALJ did not mention that each of these treatment records also consistently diagnosed Plaintiff with PTSD, Bi-Polar Disorder, Generalized Anxiety Disorder, and panic attacks.  (Tr. 443, 493, 512, 537).  The state-agency psychologists did not examine these diagnoses, and as their opinions were issued in June and July of 2020, they did not examine the later mental health treatment records.  Their opinions refer only to Plaintiff reporting some feelings of depression related to the pandemic and her physical impairments.  *See* (Tr. 111).  The ALJ does not explain whether or why he found Plaintiff's later diagnoses unpersuasive, and without discussion of Plaintiff's diagnosed mental health impairments, the Court is left with only speculation as to the ALJ's reasoning.  This is especially concerning where the ALJ did not consider whether the combination of Plaintiff's mental health impairments and physical impairments may require a more restrictive RFC at step five of the analysis.  *See* (Tr. 15-19).  Nor does the ALJ discuss why he believed Plaintiff could perform her prior work as a secret shopper, in light of her testimony that she remained fearful to enter convenience stores.  If he found this testimony was not credible, he did not discuss it.

      When an ALJ commits legal error, the Court must remand the decision unless the error was harmless.  *See Lucas v. Saul*, 960 F.3d 1066, 1067 (8th Cir. 2020).  Error is harmless if there is no indication that the ALJ would have decided differently had the error not occurred.  *See Grindley v. Kijakazi*, 9 F. 4th 622, 629 (8th Cir. 2021) (citing *VanVickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008)).  The ALJ's failure to explain his decision regarding Plaintiff's mental health diagnoses constitutes legal error, and the Court cannot say that the ALJ would not have decided differently had the ALJ fully

12

considered these diagnoses.  Thus, the Court must remand the ALJ's decision for reconsideration of Plaintiff's mental health impairments, only.  On remand, the ALJ should examine the weight given to the later treatment records, and may consider obtaining a more current consultive examination.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED in part and REVERSED and REMANDED in part**.  The Commissioner's decision is affirmed as to Plaintiff's physical impairments.  It is remanded as to Plaintiff's mental impairments only.  A separate Judgment shall accompany this Memorandum and Order.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated on this 31st day of March, 2023.